JFL

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

5:16 CV. 1443 A/R

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

AUDREY LEFFLER

**(b)** County of Residence of First Listed Plaintiff: Berks County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

JACOBS KIVITZ & DRAKE LLC
1525 LOCUST ST, 12TH FLOOR
PHILADELPHIA, PA 19102

## DEFENDANTS

CREATIVE HEALTH SERVICES, INC.; ANDREW TRENTACOSTE; KATHY KUMITIS; TIM ALEVA; KAREN BECKER

County of Residence of First Listed Defendant ______
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*

*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☒ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
29 U.S.C. §201 et seq, §502(a)(3), 29 U.S.C. §1132(a)(3), 1140, et al

Brief description of cause:
Fair Labor Standards Act; denial of pay and overtime; ERISA interference with benefits

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 1,000,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*: JUDGE ______ DOCKET NUMBER ______

DATE 03/30/2016 SIGNATURE OF ATTORNEY OF RECORD [signature]

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

MAR 30 2016



16 1443

UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.**

Address of Plaintiff: 264 Gouglersville Road, Sinking Spring, PA 19608

Address of Defendant: 111 Robinson Street, Pottstown, PA 19464

Place of Accident, Incident or Transaction: Creative Health Services, Inc.
(*Use Reverse Side For Additional Space*)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a)) Yes☐ No☐

Does this case involve multidistrict litigation possibilities? Yes☐ No☒

*RELATED CASE, IF ANY*:
Case Number: ______ Judge ______ Date Terminated: ______

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? Yes☐ No☒
2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? Yes☐ No☒
3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court? Yes☐ No☒
4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? Yes☐ No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases*:
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☒ All other Federal Question Cases
(Please specify) Fair Labor Standards Act/ERISA

B. *Diversity Jurisdiction Cases*:
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
(Please specify) ______

**ARBITRATION CERTIFICATION**
(*Check Appropriate Category*)

I, Robert C. Drake, counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

**DATE:** 3/30/2016 Robert C. Drake [signature] 57177
Attorney-at-Law Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

**I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.**

**DATE:** 3/30/2016 Robert C. Drake [signature] 57177
Attorney-at-Law Attorney I.D.#

CIV. 609 (5/2012)

MAR 30 2016



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

AUDREY LEFFLER : CIVIL ACTION

v. :

CREATIVE HEALTH SERVICES, INC., ET AL : NO. 16 1443

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) (x)

(f) Standard Management – Cases that do not fall into any one of the other tracks. ( )

| 3/30/2016 | ROBERT C. DRAKE | AUDREY LEFFLER |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-732-7027 | 215-600-3534 | RDRAKE@JACOBS-KIVITZ-DRAKE.COM |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

MAR 30 2016

$400

JACOBS KIVITZ & DRAKE, LLC
BY: Robert C. Drake, Esquire
ID No. 57177
Bebe H. Kivitz, Esquire
ID No. 30253
1525 Locust Street, 12th Floor
Philadelphia, Pennsylvania 19102
(215) 732-2656
bkivitz@jacobs-kivitz-drake.com

**UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **AUDREY LEFFLER** | : | |
| **On behalf of herself and all other similarly** | : | **Civil Action No.** 16 1443 |
| **situated current and former employees;** | : | **COMPLAINT AND DEMAND** |
| **Plaintiff,** | : | **FOR JURY TRIAL** |
| **v.** | : | |
| **CREATIVE HEALTH SERVICES, Inc.,** | : | |
| **111 Robinson Street** | : | |
| **Pottstown, PA 19464;** | : | |
| **-and-** | : | |
| **ANDREW TRENTACOSTE;** | : | |
| **-and-** | : | |
| **KATHY KUMITIS;** | : | |
| **-and-** | : | |
| **TIM ALEVA** | : | |
| **-and-** | : | |
| **KAREN BECKER** | : | |
| **c/o Creative Health Services, Inc.** | : | |
| **Defendants** | : | |

## NATURE OF CLAIMS

1. This is a Complaint for injunctive and declaratory relief and for monetary damages to redress the deprivation of rights secured to Plaintiff individually, as well as for all other similarly situated current and former employees ("Class Members") under the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. § 201 et seq., and under laws of the Commonwealth of Pennsylvania, including the Pennsylvania Minimum Wage Act ("PMWA"), 43 Pa. C.S. § 333.101 et seq.; and the Pennsylvania Wage Payment and Collection Act ("PWPCA"), 43 Pa. C.S. § 260.1 et seq., which require an employer to pay employees for all hours worked including premium pay when applicable, and under ERISA § 502 (a)(3), 29 U.S.C. §§ 1132 (a)(3), 1140, interference with attainment of ERISA protected rights.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because claims herein arise under the laws of the United States, specifically the Fair Labor Standards Act, 29 U.S.C. § 201 et seq.; under 28 U.S.C. § 1337 conferring jurisdiction over any civil action arising under any Act of Congress of the United States regulating interstate commerce; under the Declaratory Judgment Act, 28 U.S.C. § 2201; and under 29 U.S.C. § 216(b), and under 29 U.S.C. §§ 1132 (a)(3), 1140.

3. Venue is appropriate and properly established in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391 (b)(1) and (b)(2) because the Defendants reside in and/or conduct business in this District, and because in substantial part the acts and/or omissions giving rise to the claims set forth herein occurred in this District.

4. Named Plaintiff Audrey Leffler is an adult individual who resides at 264 Gouglersville Road, Sinking Spring, PA 19608.

5. Defendant Creative Health Services, Inc. ("Creative Health Services"), is an entity located at 111 Robinson Street, Pottstown, PA 19464. Defendant, Creative Health Services is a corporate entity, and an "employer" within the meaning of 42 U.S.C. §2000 e(b) and the other statutes under which this action is brought.

6. Defendant Creative Health Services is a plan sponsor within the meaning of ERISA for all pension, health and welfare employee benefit plans offered to Creative Health Services employees.

7. Defendant, Andrew Trentacoste at all relevant times hereto, has been the Chief Executive Officer of Creative Health Services.

8. Defendant, Kathy Kumitis, upon information and belief, was the previous Director of Human Resources at Creative Health Services, and remains presently an executive level employee as Chief Operations Officer.

9. Defendant, Tim Aleva, is the current Director of Human Resources for Creative Health Services.

10. Defendant, Karen Becker, was, and upon information and belief, remains Director of Outpatient Services for Creative Health Services.

**FAIR LABOR STANDARDS ACT COLLECTIVE ALLEGATIONS**

11. Named Plaintiff brings this action, inter alia, for violations of the FLSA as a collective action pursuant to Section 16(b) of the Act, 29 U.S.C. §216(b), on behalf of all persons presently and formerly employed by Creative Health Services in non-exempt positions subject to Defendants' unlawful pay practices and policies described herein and who worked for Creative Health Services, at any point during the three years preceding the date this action was instituted (the members of this putative class are referred to as "Class Members").

12. Named Plaintiff and Class Members are similarly situated, have substantially similar non-managerial job duties; are subject to substantially similar pay provisions, and are subject to the unlawful policies and practices as described herein.

13. There are numerous similarly situated current and former employees of Creative Health Services who were compensated improperly for overtime work, in violation of the FLSA and who would benefit from the issuance of a Court Supervised Notice of the instant action and the opportunity to join in the present lawsuit.

14. Similarly situated current and former employees are known to Creative Health Services, and can be located through their records.

15. There are also numerous similarly situated current and former employees of Creative Health Services who were improperly classified as independent contractors. Therefore, losing rights to certain employment rights and benefits.

16. Therefore, Plaintiff should be permitted to bring this action as a collective action for and on behalf of herself and those current and former employees similarly situated pursuant to the "opt-in" provisions of the FLSA 29 U.S.C. §216(b).

**FACTUAL BACKGROUND**

17. The foregoing paragraphs are incorporated herein as if set forth in full.

18. Named Plaintiff Audrey Leffler is an educated and trained therapist. Named Plaintiff originally worked for Creative Health Services, Inc. at its location in Pottstown, PA as an independent contractor from 1990 until 2007 as a fee for service therapist.

19. Plaintiff Audrey Leffler worked on a regular schedule established by Defendant and was compensated on an hourly rate of pay to treat only Defendant's clients as assigned and managed by Defendants' management ("Defendants")

20. Plaintiff worked approximately 30-40 hours per week, however, on numerous occasions, Plaintiff Leffler and similarly situated class members were required to work in excess of 40 hours per week

21. In 2007, Plaintiff was made an employee. Her title was Special Projects Coordinator, and she was placed in charge of coordinating the children's SAFE program. Named Plaintiff also continued to work as an outpatient therapist.

22. Named Plaintiff's hours as an "employee" were "fixed" at 37.5 hours, although she was required at times to work more than 40 hours per week.

23. As an employee, named Plaintiff was salaried, received health insurance and malpractice insurance, medical benefits, and vacation days.

24. In March 2014, Plaintiff Audrey Leffler began to be pressured by the Outpatient Director, Karen Becker, to complete additional paperwork, and also felt that she was being "written up" for inconsequential or non-existing issues.

25. In addition, Plaintiff was increasingly pressured by Becker to work longer hours without additional compensation in order to complete new and additional tasks and patient care record keeping.

26. Plaintiff therefore requested and was permitted to return to her position as an "independent contract therapist," paid on an hourly basis.

27. As an "independent contract therapist," named Plaintiff one hour of pay for each patient session she performed, she lost her malpractice and health insurance coverage, lost her right to have vacation days and she was not paid for time worked while performing required record keeping and patient related paperwork.

28. As a contract therapist, Plaintiff Leffler and similarly situated class members were paid hourly for each hour long patient treatment encounter that they performed.

29. In addition to performing the one-hour patient sessions for which Plaintiff Leffler and similarly situated class members were paid, Defendants also required Plaintiff Leffler and similarly situated class members to perform record keeping and patient related paperwork that required approximately 10-20 minutes per patient session to complete.

30. Plaintiff Leffler and similarly situated class members were not paid for the time worked while performing the required record keeping and patient related paperwork.

31. This was so, despite that named Plaintiff and other similarly situated "independent contractors" continued to work in excess of 40 hours per week, although they were paid only "per hourly session," and worked at Defendant's direction and at all times on its facility and within its control, regardless of how much actual time was worked.

32. In October 2014, named Plaintiff and other similarly situated employees were instructed to complete a new auditing tool, which constituted a six (6) to seven (7) page report. The checklist included every step a patient would go through, including with other representatives at Creative Health. This meant that Plaintiff and other similarly situated class members had to prepare audit charts in anticipation of a state audit, and to do so on their own time. The preparation and editing of auditing charts is a non-clinical administrative task. Plaintiff's responsibilities included review and audit of the entire chart, including portions of the chart that typically belonged to others, e.g. psychiatry notes, administrative information, etc. In addition, if there were any mistakes or omissions, Plaintiff had to correct them, including going to others at Creative Health to obtain the necessary corrected information.

33. Auditing the charts was required by Defendants to be done on the employee's "own time," and was both time-consuming and unpaid. For example, an audit chart which included other's mistakes or omissions might take Plaintiff up to three hours to complete. Even if Plaintiff saw only 20 patients in a week, she spent on average another twenty (20) hours on the unpaid audit charts. Plaintiff and similarly situated employees were paid only for the twenty (20) hours worked maintaining Defendants' audit charts was unrecorded, "off-the-books" unpaid work time.

34. Additionally, the named Plaintiff and other similarly situated employees were instructed to perform off-the-book unpaid urine drug screening of patients, another task that involved unpaid non-clinical time, often 15-20 minutes per patient.

35. Plaintiff and other similarly situated employees were also not paid for other off the books non-clinical administrative, but required tasks, e.g. emptying the paper shredder (marathon shredding), safety procedures, conflict resolution, or received only partial pay for other required non-clinical tasks, e.g. mandatory attendance at staff meetings, which time was also off-the-book unreported unpaid time.

36. Plaintiff and other similarly situated employees also were required by Defendants to make referrals, e.g. suspected child abuse was reported to Children and Youth, or referrals to a case manager, Drug and Alcohol treatment probation, and the like. This was also off-the-book uncompensated time.

37. All issues came to a head in October 2014, when Leffler and co-worker Mark Merriman reported their concerns to Karen Becker.

38. Ms. Becker met with the employees, and told them she would share their concerns with Andrew Trentacoste. She was antagonistic and dismissive at this meeting.

39. In May 2015, Andrew Trentacoste, the Chief Executive Officer, who had learned of the complaints earlier from Karen Becker, including that the employees were not being compensated for off-the-book tasks, overtime, and that they were not receiving employee benefits, held a meeting.

40. When Plaintiff and other similarly situated employees complained about their unpaid and time consuming duties, Mr. Trentacoste, told the employees at the meeting that in order to satisfy their complaints, he would have to cancel everyone's contract and write up new ones, but he also threatened that a number of employees would not receive <u>any</u> contracts, i.e. some employees would lose their jobs if such tasks were to be compensated.

41. Defendant Trentacoste also reviewed an email named Plaintiff authorized, in which she stated these employment related complaints, and as a result, and in retaliation for organizing the staff meeting and raising the issues of unpaid work, was terminated by him in May 2015.

42. Upon information and belief, Defendants have maintained and, directly or indirectly, directed, aided, abetted and/or assisted in executing an unlawful wage payment system for at least the last three years, and have enforced such unlawful pay policies and practices at Defendant's Pottstown facility.

43. During the relevant time, Defendants conspired to and acted in concert to willfully and intentionally mislead Plaintiff and Class Member employees as to their right to receive and

Defendants' obligation to pay Plaintiff and Class Members wages for all time worked and overtime wages for overtime hours worked, which prevented Plaintiff and Class Member employees, from discovering that Defendants' wage payment policies and practices were unlawful and from asserting their rights to receive wages and overtime pay.

44. During the relevant time, Defendants did not maintain and willfully refused to maintain true, correct or accurate records of Named Plaintiffs and Class Member employees' hours of work, pay, or overtime premium pay, and other employment and wage payment records as required by state and federal laws and regulations.

45. During the relevant time, Defendants conspired to and acted in concert to intentionally and willfully threaten and intimidate Named Plaintiff and Class Member employees for the purpose of preventing Named Plaintiff and Class Members from claiming overtime premium pay for overtime hours worked.

46. During the relevant time, Defendants conspired and acted in concert to intentionally and willfully retaliate against Named Plaintiff and Class Member employees who attempted to or did assert their rights to overtime premium pay for overtime hours worked.

47. Upon information and belief, named Plaintiff Audrey Leffler was one of 30 to 40 similarly situated willfully and intentionally wrongly classified "independent contractors," making up nearly three quarters of Defendant's mental health therapists on staff within the last several years of her employment by Defendant.

48. The services provided by named Plaintiff Audrey Leffler and the other similarly situated "independent contractors" were and remain part of Defendant's regular business of providing out-patient mental health therapy.

49. Plaintiffs Audrey Leffler and the similarly situated "independent contractors" had no investment in the work facilities and equipment of Defendant and they had no opportunity to incur profit/loss from Defendant's business.

50. Plaintiff Audrey Leffler's work and the work of the similarly situated "independent contractors" did not require any special or different skill or judgment than that provided by any other mental health therapist employed by Defendant.

51. Plaintiff Audrey Leffler had a long term employment relationship with Defendant, beginning in 1990, during which Plaintiffs Audrey Leffler and the other similarly situated

"independent contractors" performed substantially the same work and services as all other mental health therapists employed by Defendant.

52. All other similarly situated "independent contractors" had similar long-term, open ended employment relationships with Defendant.

53. Defendants provided and controlled all of the tools, instrumentalities and locations for the work performed by Plaintiffs Audrey Leffler and the similarly situated "independent contractors."

54. Defendants supervised all aspects of Plaintiffs Audrey Leffler's and similarly situated "independent contractor's"' jobs, job performances and required Plaintiffs Audrey Leffler and similarly situated "independent contractors" to report to and receive management from the same management team and organization, under the same performance and job standards, as all other mental health therapists employed by Defendants, and were provided with and required to follow the same "Creative Health Services, Inc. PERSONNEL POLICIES AND PROCEDURES" as all other employees of Defendant.

55. Defendants willfully, intentionally and falsely classified Plaintiffs Audrey Leffler and the similarly situated "independent contractors" for the purpose of falsely reporting local, state-and federal employment and payroll taxes.

56. Defendants willfully, intentionally and falsely recorded and reported Plaintiff's and similarly situated "independent contractors" work time and hours worked for the purpose of wrongfully denying pay for all hours worked and to deny premium pay for all hours worked in excess of forty (40) hours in any given work week.

57. Defendants willfully, intentionally and falsely classified Plaintiffs Audrey Leffler and the similarly situated "independent contractors" for the purpose of wrongfully excluding them from participation in the pension, health and welfare employee benefit plans sponsored by Defendant, and as a scheme to avoid reporting and paying their employer's share of the costs of sponsored employee benefits.

58. Counts I through VI or this action on behalf of herself and a class consisting of all persons employed by Defendant who were denied their right to receive wages for all time worked and overtime wages for overtime hours worked.

59. Plaintiff Audrey Leffler brings COUNT VII of this action on behalf of herself and a class consisting of all persons who were employed by Defendant and intentionally and willfully

misclassified as "independent contractors" throughout and during Plaintiff Audrey Leffler's employment by Defendant.

60. The prerequisites of a class action pursuant to Fed. R. Civ. P. 23(a) are met in this case because:

a. Numerosity – Members of the Class are so numerous that joinder of all members is impractical. The precise size of the class is presently unknown and can only be ascertained through appropriate discovery, as well as by the provisions of the FLSA.

b. Commonality – Common questions of law and fact exist as to all members of the Class, such as whether Defendant exercised the degree of control and direction such that "independent contractors" may be deemed employees for the purpose of participation in employee retirement, health and welfare benefit plans of Defendant; and, whether the policy and purpose of classification of Class members as "independent contractors" was to interfere with their rights as participants in Defendant's employee retirement, health and welfare benefit plans; and, whether such policy and purpose violates ERISA's proscription of interfering with the attainment of any right to which such participant may have become entitled under an appropriate plan. Furthermore, Defendants applied common wage determination, record keeping and wage payment policies and procedures that interfered with Class Members' rights to wages and payment of wages and payment of overtime premiums guaranteed by state law of Pennsylvania.

c. Typicality - Plaintiff's claims are typical of the claims of the Class in that Plaintiff and all Class members were or could have been misclassified as an "independent contractor" for the purpose of interfering with the attainment of rights attainable under such plans.

d. Adequacy - Plaintiff will fairly and adequately represent and protect the interests of the Class as a whole. Plaintiff has retained counsel experienced in prosecution of such litigation, in particular., senior and experienced lead trial litigators of employment and employee benefits cases, Robert C. Drake, Esquire and Bebe H.

Kivitz, Esquire, partners at the law firm Jacobs Kivitz & Drake LLC located in Philadelphia, PA.

61. This Action is maintainable as a class action under one or more of the following subsections of Fed. R. Civ. Pro. 23(b).

a. R. 23 (b)(1) - prosecution of separate actions by individual members of the Class would risk inconsistent adjudication with respect to individual members and establish incompatible standards of conduct for Defendant; and/ or adjudications with respect to individual members would as a practical matter be dispositive of the interests of the others not party to the adjudication; or substantially impair their ability to protect their own interests.

b. R. 23(b)(2) - Defendant has adopted a policy to interfere with misclassified "independent contractor's" right to attain benefits under Defendant's employee retirement, health and welfare plans and Defendants acted on grounds generally applicable to the Class, thereby making it appropriate for final injunctive and declaratory relief with respect to the Class as a whole.

c. R 23 (b)(3) - Questions of law and fact common to the members of the Class predominate over issues affecting only individual Class members making class action superior to other available methods for adjudication.

62. Plaintiff is aware of no other actions based upon the same operative facts as the present action.

63. No undue difficulties are anticipated to result from the prosecution of this suit as a class action.

**COUNT I**
**Fair Labor Standards Act**

64. Plaintiffs and Class Members re-allege the above paragraphs as if fully restated herein.

65. Defendants willfully violated their obligations under the FLSA and are liable to Plaintiff and Class Members for payment of wages for all "off-the-books" hours worked that were suffered or permitted by Defendants but not paid in violation of the FLSA and 29 C.F.R. §785.11.13.

66. Defendants willfully violated their obligations under the FLSA and are liable to the Plaintiff and Class Members for overtime both pursuant to § 207 and based upon 29 C.F.R. §778.315.

**COUNT II**
**Fair Labor Standards Act**
**Retaliation**

67. Under § 215 (a)(3) of the Fair Labor Standards Act, it is unlawful to discharge or in any employee who has asserted right under the FLSA.

68. Defendants knowingly and willfully violate this section and threaten to violate this section anytime Plaintiff Leffler and similarly situated Class Members assert rights under the FLSA.

69. Defendant knowingly and willfully violated this section by terminating Plaintiff Leffler's employment because she asserted her rights and the rights of other Class Members under the FLSA.

70. As a direct and proximate result of Defendants acts of retaliation, Plaintiff Leffler and Class Members have suffered damages.

**COUNT III**
**Pennsylvania Minimum Wage Act**

71. Plaintiff and Class Members re-allege the above paragraphs as if fully restated herein.

72. As a direct and proximate cause of Defendants' acts, including Defendants' failure to act in good faith, Defendants violated the PMWA, and the Plaintiffs and Class Members have suffered damages.

**COUNT IV**
**Pennsylvania Wage Payment and Collection Act**

73. Plaintiffs and Class Members re-allege the above paragraphs as if fully restated herein.

74. As a direct and proximate result of Defendants' acts, including Defendants' failure to act in good faith, Defendants violated the Pennsylvania WPCL, and Plaintiffs and Class Members have suffered damages.

**COUNT V**
**Accounting at Law and Equity**

75. Plaintiffs and Class Members re-allege the above paragraphs as if fully restated herein.

76. Plaintiffs and Class Members are entitled to an accounting at law and equity of the monetary benefit that was conferred upon Defendants by working in excess of 40 hours per week on Defendants' behalf without receiving compensation, including overtime premium compensation.

**COUNT VI**
**Conversion**

77. Plaintiff and Class Members re-allege the above paragraphs as if fully restated herein.

78. Defendants are liable to Plaintiff and Class Members for conversion.

79. As a direct and proximate result of Defendants' conversion of monies belonging to Plaintiff and Class Members, Plaintiffs and Class Members have suffered damages.

**COUNT VII**
**43 Pa. Con. Stat. § 260.8 - Failure to Keep Accurate Records**

80. Plaintiffs and Class Members re-allege the above paragraphs as if fully restated herein.

81. As a direct and proximate result of Defendants' failure to keep true, accurate and correct records of hours worked by Plaintiffs and Class Members, Plaintiffs and Class Members have suffered damages.

**Relief Requested**

WHEREFORE, Plaintiffs and Class Members demand judgment against Defendants in their favor and that they be given the following relief:

- Certification under FRCP 23 as a class-action and as a collective action under FLSA;
- an order preliminarily and permanently restraining Defendants from engaging in the aforementioned wage calculation and payment violations;
- an award of the value of the Plaintiffs' and Class Members' unpaid wages and any other amounts necessary to make them whole;

- liquidated damages under the FLSA equal to the sum of the amount of wages and overtime premium pay that were not properly paid to Plaintiffs and Class Members;
- all relief available under the Pa. Minimum Wage Act and the Pa. Wage Payment and Collection Act including, without limitation, additional damages such as 25% of Plaintiffs' and Class Members' unpaid wages, including unpaid overtime premium pay, under the illegal policies and practices described in this Complaint, or $500, whichever is greater, and an additional amount equal to the unpaid wages, including unpaid overtime premium pay;
- an award of reasonable attorneys' fees, costs, and expenses incurred in vindicating Plaintiffs' and Class Members' rights;
- an award of pre-and post-judgment interest;
- an accounting of the monetary benefit that was conferred upon Defendants by Plaintiffs' and Class Members' work in excess of 40 hours per week on Defendants' behalf without receiving compensation, including overtime premium pay, and;
- such other and further legal or equitable relief as this Court may deem to be just and appropriate.

**COUNT VIII**
**ERISA §§ 502(a)(3), 510, 29 U.S.C. §§ 1132(a)(3), 1140 – Claim for Interference with the Attainment of ERISA Protected Rights**

82. Plaintiff incorporates as if fully restated all prior allegations.

83. Defendant willfully and intentionally misclassified Plaintiff Audrey Leffler and the members of the class as "independent contractors" as a policy or practice established in whole or in part for the purpose of interfering with their attainment of the right to obtain employee retirement, health care and welfare benefits that they would have become eligible for and entitled to under ER.ISA covered plans established, sponsored and maintained by Defendant.

84. Section 510 of ERISA makes it unlawful for any person to establish a policy or practice or take any action against a participant of a plan "for the purpose of interfering with the attainment of any right to which the participant may become entitled to under the plan ... "

85. Defendant willfully and intentionally misclassified Plaintiff Audrey Leffler and the other Class Members as "independent contractors" despite engaging them to work as employees of Defendant for the purpose, in whole or in part, of interfering with their attainment of the right to

obtain benefits under the Defendant's ERISA-covered plans, including Defendant's employee retirement, health care and welfare benefit plans, Defendant has violated Section 510 of ERISA.

86. Section 510 of ERISA also provides that "the provisions of§ 502 [of ERISA] shall be applicable in the enforcement of this section."

87. Section 502(a)(3) of ERISA provides that a plan participant may bring an action "(A) to enjoin any act or practice which violates any provision of [Title I of ERISA], or (B) to obtain other equitable relief (i) to redress such violation or (ii) to enforce any provision of the terms of [Title I of ERISA]."

88. Because Defendant has violated Section 510 of ERISA, Defendant is subject to the relief provided for in Section 502(a)(3) of ERISA.

**Relief Requested**

WHEREFORE; Plaintiff respectfully requests that this Court enter an Order:

a. Certifying this action as a class action pursuant to Fed. R. Civ. Pro. 23:

b. Preliminarily and permanently enjoining Defendant from misclassifying employees such as Plaintiff Audrey Leffler and the Class Members as "independent contractors" to prevent them from attaining rights under ERISA covered plans established, sponsored and maintained by Defendant.

c. Declare illegal Defendants policy or practice of intentionally and willfully misclassifying employees as "independent contractors" for the purpose of preventing them from participating and attaining rights to retirement, health care and welfare benefits under the ERISA-covered plans established, sponsored and maintained by Defendant

d. Order that Defendants take all steps necessary to place Plaintiff and the other Class Members, discharged as well as currently employed by Defendants in the positions they would have been in had Defendant not intentionally and willfully misclassified them as "independent contractors," including but not limited to disgorgement of all profits and benefits obtained by Defendant equal to the amount that Defendant earned by unlawfully intentionally and willfully misclassifying Plaintiff Audrey Leffler and the Class Member employees such as (but not limited to) company matched contributions, discounted or subsidized premiums, and other costs incurred and benefits lost by Plaintiff Audrey Leffler

and the Class Members because of Defendant's prohibited actions, as well as disgorgement of any unjust enrichment Defendant obtained due to Defendant's misclassification of "independent contractors."

e. Awarding Plaintiff her attorneys' fees and costs pursuant to ERISA § 502(g)(l), and/or the common fund theory as is appropriate.
f. Ordering Defendant to pay prejudgment interest; and
g. Awarding such and further relief as is just and equitable.

**JURY DEMAND**

Plaintiff and Class Members demand a jury to hear and decide all issues of fact in accordance with Federal Rule of Civil Procedure 38(b).

Robert C. Drake, Esquire
Bebe H. Kivitz, Esquire
Jacobs Kivitz & Drake LLC
Attorneys for Plaintiff

Dated: March 30, 2016