**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

|  |  |  |
|---|---|---|
| | : | |
| AUDREY LEFFLER, et al., | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | NO.  16-1443 |
| vs. | : | |
| | : | |
| CREATIVE HEALTH SERVICES, INC., et al., | : | |
| Defendants. | : | |
| | : | |

_____

**MEMORANDUM**

Henry S. Perkin, M.J.                                             September 29, 2017

          Plaintiffs, Audrey Leffler and Mark Merryman ("Plaintiffs") have brought claims

and seek class status against Defendants Creative Health Services, Inc., Andrew Trentacoste,

Kathy Kumitis, Tim Aleva and Kevin Becker for violations of the Employment Retirement

Security Act ("ERISA"), the Pennsylvania Minimum Wage Act ("PMWA"), the Pennsylvania

Wage Payment Collection Law ("PWPCL"), the Fair Labor Standards Act ("FLSA") and

common law conversion.  This matter is before the Court on the Motion for Summary Judgment

filed by Defendants.   Having reviewed and considered the contentions of the parties, the Court is

prepared to rule on this matter.[1]

I.       **JURISDICTION.**

          The Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. §

1331 and jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

_____

          [1]        This case was originally assigned to the Honorable Joseph F. Leeson, Jr., and the parties consented
to the exercise of jurisdiction by a Magistrate Judge.  Judge Leeson entered an April 12, 2017 Order pursuant to 28
U.S.C. section 636 (c) and Federal Rule of Civil Procedure 73 referring this case to the undersigned for resolution.

## II.     <u>STANDARD OF REVIEW.</u>

Pursuant to Rule 56(a), summary judgment is proper where there is no genuine issue of material fact.  FED. R. CIV. P. 56(a).  In viewing the evidence in the light favorable to the non-moving party, summary judgment will be granted against a party who does not make a sufficient showing to establish "an element essential to that party's case." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552-53, 91 L. Ed. 2d 265 (1986).

The moving party carries the initial burden to inform the court of the basis for its summary judgment motion; to produce evidence to establish a prima facie case as to each element; and to identify the absence of no genuine issue of material fact.  <u>Id.</u>  When the non-moving party cannot establish an essential element and there is "no genuine issue as to any material fact," the moving party is entitled to summary judgment as a matter of law.  <u>Id.</u> at 322.

Material facts are those that "might affect the outcome of the suit under the governing law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  Mere factual disputes will not preclude summary judgment when they are irrelevant to the outcome of the suit. <u>Id.</u>  An issue is "genuine" if a reasonable trier of fact could return a favorable verdict for the non-moving party.  <u>Mengel v. Reading Eagle Co.</u>, CIV.A. 11-6151, 2013 WL 1285477 (E.D. Pa. Mar. 29, 2013)(citing <u>Anderson</u>, 477 U.S. at 248).

To defeat summary judgment, the non-moving party must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(c). Moreover, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions to survive a summary judgment motion.  <u>Williams v. Borough of W. Chester</u>, 891 F.2d 458, 460 (3d Cir. 1989)(citing <u>Celotex</u>, 477 U.S. at 325).  Where the non-moving party

will have the burden of proof at trial, the moving party can make a showing that there is an "absence of evidence to support the non-moving party's case."  Jones v. Indiana Area Sch. Dist., 397 F. Supp.2d 628, 642 (W.D. Pa. 2005)(quoting Celotex, 477 U.S. at 325).

**III.     PROCEDURAL HISTORY.**

Plaintiffs filed their Complaint in this action on March 30, 2016 and their Amended Complaint on December 19, 2016.  Dkt. Nos. 1, 27.  The case was assigned to the Honorable Joseph F. Leeson.  On February 22, 2017, the instant Motion for Summary Judgment was filed.  Id. at 37.  On April 12, 2017, the parties consented to try this case before the undersigned.

In the Amended Complaint, Plaintiffs allege that the Defendants interfered with the attainment of rights protected under the Employment Retirement Security Act ("ERISA") (Count VIII), the Pennsylvania Minimum Wage Act ("PMWA") (Count III), the Pennsylvania Wage Payment Collection Act ("PWPCA") (Count IV), the Fair Labor Standards Act ("FLSA") (Counts I and II) and that Defendants are liable to Plaintiffs for an Accounting at Law and Equity (Count V), Conversion (Count VI), and for failure to keep accurate records pursuant to Pa. C.S.A. § 260.8 (Count VII).  Oral argument on the Motion for Summary Judgment was held on July 17, 2017.

**III.     FACTS.**

Defendant Creative is a not-for-profit and mental health social services and goverment-funded agency based in Pottstown, Pennsylvania, providing psychiatric and psychological evaluations, medication checks, and individual outpatient therapy, among other services.   Among other services, Creative provides outpatient counseling, psychotherapy and

3

medication management services to more than 5,000 adults, children and families annually, including low income residents of Berks, Montgomery and other southeastern Pennsylvania counties. Defendant Andrew Trentacoste ("Trentacoste") is Creative's Chief Executive Officer. Defendant Kathy Kumitis ("Kumitis") is Creative's Chief Operating Officer. Defendant Timothy Alleva ("Alleva") is Creative's Director of Human Resources and the Plan Administrator for all of Creative's ERISA qualified employer sponsored employee health, welfare and retirement plans. Defendant Karen Becker ("Becker") is Creative's Director of Outpatient Services.

Plaintiff Audrey Leffler worked for Creative from 1990 until 2015 performing outpatient therapy services as a fee for service outpatient therapist. During that time, her classification was changed from independent contractor to employee four times but her job responsibilities remained largely unchanged and she performed the responsibilities of a clinical mental health therapist throughout the entire period. On March 20, 2014, after she felt targeted by Becker and told by Alleva that she had to be a contractor to work a four-day week, she became a contractor again. At no time while she worked as a contractor was Leffler paid fees for all of her services, at the agreed upon hourly rate, although it was required by the terms of her contract.

Leffler holds a degree from West Chester University in Health and Physical Education in 1972 and earned her masters from Southwestern University in 1988. In addition, Leffler holds several certificates including for hypnotherapy; animal therapy (known as a Tellington Touch Certification) as well as other related certifications as identified on her resume.

In 1990, Leffler joined Creative as an independent contractor – clinical therapist. She was simultaneously working for Northwestern Human Services of Montgomery County and

continued that dual employment from 1997 to 2001. Leffler also had other simultaneous employment with Bornemann Psychiatric Associates from 2002 to 2007.  Regardless of whether an employee or independent contractor, in addition to working as an outpatient therapist Leffler was a facilitator in Creative's Stop Abuse Foster and Empowerment ("SAFE") program for children in domestic violence situations.  Leffler split her time between the SAFE Program and outpatient therapy. She was the only therapist at Creative who had a split schedule of this nature. Leffler entered into two new Independent Contractor Agreements on March 17, 2014.  Although Leffler recognized her signature on the agreements she was not, as she explained, "contract oriented" and does not remember the agreements.  As an independent contractor, Leffler was able to itemize certain expenses and write them off against her income, including office supplies she claims to have purchased and insurance.  In reference to her home office expense, the work-related usage was both for her Creative related activities and those which she performed for other agencies in reference to animal therapy.  Leffler became a contrator because she felt she was being picked on by Defendant Becker and her supervisor, Jena Stoltzfus. When she expressed that she wanted to work four days per week, Defendant Alleva told her that she could only do that as a contractor.  She worked at Creative until June, 2015.

Plaintiff Mark Merryman was affiliated with Creative from 2007, when he began work as an intern while he attended Bryn Mawr College to receive his Master's Degree, through August of 2016.  Merryman became an independent contractor in May, 2008 and a Licensed Clinical Social Worker in June, 2011.  He could only see patients on medical assistance until he was licensed.  Merryman executed Creative's standard Independent Contractor Agreement. Unlike Leffler, Merryman never asked Creative to change his status from that of an independent

contractor to an employee.

## IV.    **DISCUSSION.**

### A.    **FLSA Claims.**

Independent contractors are not covered under the FLSA.  <u>Rutherford Food Corp.</u>
<u>v. McComb</u>, 331 U.S. 722, 728-29 (1947); <u>Bamgbose v. Delta-T Group, Inc.</u>, 684 F. Supp.2d
660, 668-69 (E.D. Pa. 2010).  Defendants move for summary judgment on the FLSA claims
against them basis that Plaintiffs are independent contractors, not employees, and are therefore
not covered under the FLSA.  The question of whether an FLSA plaintiff is independent
contractor or an employee is a question of law for the Court.  <u>Todaro v. Township of Union</u>, 27
F. Supp.2d 517, 533 (D.N.J. 1998)(citations omitted).  The United States Court of Appeals for
the Third Circuit has set forth an "economic realities test" to determine whether an independent
contractor, in reality, is an employee subject to the FLSA.  Criteria are: (1) the degree of the
alleged employer's right to control the manner in which the work is to be performed; (2) the
alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the
alleged employee's investment in equipment of materials required for his task, or his
employment of helpers; (4) whether the service requires a special skill; (5) the degree of
permanence of the working relationship; and (6) whether the service rendered is an integral part
of the alleged employer's business. <u>Martin v. Selker Brothers, Inc.</u>, 949 F.2d 1286, 1293 (3d Cir.
1991).  The Court should also consider whether, as a matter of economic reality, the individuals
are dependent upon the business to which they render service. <u>Donovan v. DialAmerica Mktg,</u>
<u>Inc.</u>, 757 F.2d 1376, 1382-83 (3d Cir. 1985), <u>cert. denied</u>, 474 U.S. 919 (1985)(citations and
quotations omitted).

1.      **Defendants' Responses to Plaintiffs' Requests for Admissions.**

In Plaintiffs' opposition to Defendants' motion for summary judgment, Plaintiffs argue that the instant motion for summary judgment should be denied on the FLSA claims due to Defendants' admission in their responses to Plaintiffs' Request for Admissions numbers one and two that Plaintiffs are employees and Defendants are employers under the FLSA.  Plaintiffs' first Request for Admission required the Defendants to admit or deny that "[T]he Plaintiff at all times relevant hereto was an "employee" as that term is defined by 29 U.S.C. § 203(e)." See Pls.' Opp'n. to Summ. J., Ex. 10. In the second Request for Admission, Defendants were asked to admit or deny that "[Defendant Creative Health Services, Inc. at all times was an "employer" as that term is defined by 29 U.S.C. § 203(d), (Exhibit "10").  The Requests for Admissions are dated September 21, 2016.  Pls.' Opp'n. to Summ. J., Ex. 10, p. 3.  Defendants responses to the Requests for Admissions are dated November 1, 2016.  Id., Ex. 10, p. 7.  The responses to the Requests contained General Objections which included "[t]he Requests require Defendant to make legal conclusions."  Id., Ex. 10, p. 6.  The Defendants' response to both of the above Requests was "Admitted."  Id.

On the basis of Defendants' admission under Fed. R. Civ. P. 36 that Plaintiffs are employees for the purposes of the FLSA, Plaintiffs request that this Court hold and declare that the Defendants cannot now challenge their own admission in this motion for summary judgment and that Plaintiffs and similarly situated class members are employees covered by the FLSA who have "an actionable employer/employee relationship" with Defendants.  Pls.' Br. in Opp'n. To Summ. J., p. 12.  Plaintiffs further contend that the Defendants have waived their right to argue that Leffler and Merryman, by virtue of the Economic Realities test, were, at the time complained

of, independent contractors not entitled to the protections of the FLSA.

In Response, Defendants contend that the Requests for Admission have no bearing upon this Motion, there has been no waiver of their right to argue that Plaintiffs were independent contractors, and it has never been in dispute that Leffler transitioned from independent contractor to full-time employee and then, to accommodate her schedule, returned to contractor status. Defendants further argue that the only Plaintiff in this lawsuit at the time the Requests for Admissions were answered was Leffler. Merryman was not added as a Named Plaintiff until around one month after the Requests were answered and Plaintiffs' Exhibit 10 shows that Defendants' answers to Requests for Admission numbers 1 and 2 only applied to Leffler because they were answered in the singular, not plural.

Defendants note that most of the time spent in depositions in this matter concerned the "employee versus independent contractor" issue. Defendants' position always has been that Leffler's choice to be an employee for a designated period of time has no impact on whether the duties performed by Merryman or other mental health outpatient therapists at Creative rendered them, as a matter of law, employees or independent contractors.

An admission formally made pursuant to the federal rules of court must be deemed conclusively established. Pretorian Ins. Co. v. Site Insp., LLC., 604 F.3d 509 (8th Cir. 2010) (admission under Rule 36 cannot be overcome by offering contradictory evidence or affidavit); Central Admixture Pharmacy Services, Inc. v. Advanced Cardiac Solutions, P.C., 482 F.3d 1347 (Fed. Cir. 2007); see also Civil Model Jury Instructions for the District Courts of the Third Circuit (2010), Instruction 2.4, Comment ("This instruction could be applied to matters admitted by way of pleading or a request for admission, as well as facts stipulated during the

trial. If a stipulation or admission is as to a matter of fact, the jury is to be instructed that it must consider the fact as true").

A court may consider Rule 36 admissions when deciding whether parties agree to a fact for purposes of summary judgment. See Fed. R. Civ. P. 36(b)("A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended."); Fed. R. Civ. P. 56(c)(1)(A)("A party asserting that a fact cannot be disputed must support the assertion by (A) citing to particular parts of materials in the record, including . . . admissions[.]", and it provides that "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney. In the Third Circuit, the United States Court of Appeals has "long recognized that deemed admissions are sufficient to support orders of summary judgment." Kelvin Cryosystems, Inc. v. Lightnin, 252 F. App'x 469, 472 (3d Cir. 2007)(citations omitted).

The issue whether Plaintiffs are employees or independent contractors is an issue of law which this Court is tasked with determining. Requests that seek legal conclusions are not allowed under Rule 36. 7 James Wm. Moore, et. al. Moore's Federal Practice § 36.10[6] and 36.10[8] (3d ed. 1997). In this case, Plaintiffs are asking this Court to recognize that the admissions are sufficient to defeat summary judgment on an issue of law which this Court must decide, whether the Plaintiffs were employees or independent contractors within the meaning of the FLSA. Martin, 949 F.2d at 1293 (citing Rutherford, 331 U.S. at 730); Jochim v. Jean Madeline Educ. Ctr. of Cosmetology, Inc., 98 F. Supp.3d 750, 756 (E.D. Pa. 2015)(citing Martin, 949 F.2d at 1292). Looking at the circumstances of this case, the extremely broad nature of the

FLSA's definitions, coupled with the narrow wording of Requests for Admission nos. 1 and 2, makes clear that Creative's "admission" solely concerned Leffler's status during the time she was engaged as a full-time employee, not Creative's longstanding position that the Plaintiffs cannot satisfy the Economic Realities test.  The admissions responses provide no reason to ignore the Supreme Court emphasis that "that the courts should look to the economic realities of the relationship in determining employee status under the FLSA." Martin, 949 F.2d at 1293 (citing Rutherford, 331 U.S. at 730).  For all of these reasons, the Defendants' Admissions are not dispositive of the issue whether Leffler and Merryman are considered employees or independent contractors.

**2.     Whether Leffler and Merryman are Employees or Independent Contractors and Eligibility to Assert Claims under the FLSA**.

The United States Court of Appeals for the Third Circuit has set forth an "economic realities test" to determine whether an independent contractor, in reality, is an employee subject to the FLSA.  Criteria are: (1) the degree of the alleged employer's right to control the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment of materials required for his task, or his employment of helpers; (4) whether the service requires a special skill; (5) the degree of permanence of the working relationship; and (6) whether the service rendered is an integral part of the alleged employer's business. Martin, 949 F.2d at 1293 (citations omitted).  The Court should also consider whether, as a matter of economic reality, the individuals are dependent upon the business to which they render service. DialAmerica, 757 F.2d at 1382-83 (citations and internal quotations omitted).  Each factor is

10

considered *seriatim*.

        a.      <u>Integral Part of the Employer's Business</u>.

It is not disputed that mental health services are the essential part of Creative's business.  This factor, therefore, weighs in favor of employee status.

        b.      <u>Investment in Equipment or Materials or Employment of Helpers</u>.

This factor considers "the alleged employee's investment in equipment or materials required for his task, or his employment of helpers." <u>Luxama v. Ironbound Express, Inc</u>., Civ.A.No. 11-2224(ES), 2013 WL 3286081, at *6 (D.N.J. June 27, 2013)(citation omitted). Plaintiffs were required, at their own expense, to maintain their license status, provide professional liability insurance and participate in continuing professional education.  Leffler provided dogs and other related items in order to provide animal assisted therapy. Both Leffler and Merryman deducted expenses as reflected on the Schedule C of their tax returns for supplies and the use of their private homes as offices. Further, the Plaintiffs were solely responsible for developing their own treatment plan and providing whatever materials were necessary, if any.

Plaintiffs do not contest that they did not and could not delegate any portion of their work for Defendants to others not employed or engaged by Defendants. With regard to equipment and materials, Defendants provided work and office space, common space, and administrative support and equipment for Plaintiffs' work.  While this factor is not significant given the fact that mental health therapy is not a profession requiring "equipment and materials," to the extent it is relevant, it too weighs in favor of independent contractor status.

        c.      <u>Degree of Permanence</u>.

The next area of review this Court must examine is whether the worker works for

the alleged employer exclusively and continuously.  Defendants note that neither Leffler nor

Merryman worked exclusively for Creative and both were free as independent contractors to

work for other mental health providers and in fact, did so. For a period of seven years, Leffler

chose to be a full-time Creative employee and give up work with other providers and then

voluntarily chose to go back to independent contractor status. Among the reasons provided by

Leffler was the desire to reduce her hours and her stress. Merryman used his independent

contractor status to commence work at his current employer and transition from one base of

operation (Creative) to another (CAPPS).  Merryman and Leffler both were free to work as much

or as little as they wanted for Creative while simultaneously working for other providers.

       Plaintiffs do not contest that they have a very high degree of permanence in their

relationships with Defendants. While the Defendants argue that the Plaintiffs could work for

others, for periods of years at a time they did not do so.  Merryman worked "full-time"

exclusively for Defendants from 2007 to March, 2015.  Leffler worked "parttime"and "full-time"

interchangeably as an "employee" and as an "independent contractor" without change in nature

of work performed exclusively for Defendants from 1990 to 2015, except for the period from

2002 to 2007 when she worked 20 or fewer hours/week for a psychologist practice while

working part-time for Defendants.  Courts have held that under these circumstances, such

evidence indicates that workers are employees.  See DialAmerica, 757 F2d. at 1384-85

(correcting District Court for ignoring fact that workers worked continuously for the employer

for long periods and that such evidence "indicates [that workers] were employees").

       In this case, the Plaintiffs' at-will term of employment with Defendants is no

different than Defendants' employees' at-will term of employment with Defendants, and the

"permanence" of "independent contractor" relationships with Defendants - such as Defendant Becker's nineteen years working exclusively for Defendants as an "at-will" independent contractor and five years working as an "at-will" employee - indicates a high degree of permanence indicative of an employment relationship.  This factor weighs in favor of employee status.

d.    Degree of Employer's Control.

The next factor is the degree of supervision over the worker, control over the worker's schedule and instruction as to how the worker is to perform his or her duties. DialAmerica, 757 F.2d at 1383-84; Bamgbose, 684 F. Supp.2d at 669.  The most significant reason for both Plaintiffs' decision to choose the independent contractor status was flexibility in controlling their schedule, including both the number of hours they would work as well as the ability to work with other providers and mental health services.  Under the Independent Contractor Agreements, both Leffler and Merryman could work as little as zero hours per week and client assignments would only be made once they provided Creative with their availability. Once a client was assigned, it was exclusively in the control of the therapist to set the time for an appointment.  In addition, the plan of treatment for each client was solely determined by the Plaintiffs in their independent professional judgment and was not dictated by Creative.  Leffler utilized unorthodox treatment methods, including the use of pets.  Treatment plans and progress were reviewed by a psychiatrist, but the course of treatment and implementation was in the exclusive hands of the therapist.

Plaintiffs argue that this factor weighs in favor of employee status because many administrative responsibilities were maintained by the Defendants, including assignment of

13

offices in which treatment of clients took place, each Plaintiff had assigned and dedicated telephone extensions in the telephone system and client appointments were made through Creative's front desk staff for both "contractors" and "employed" therapists without reference to whether the clinician was a "contractor" or "employee."  In addition, Plaintiffs were assigned work and supervised by the same department managers who managed all therapists in their departments regardless of whether "employed" or "contracted" and who were responsible for scheduling and staffing work within their departments, regardless of whether they assigned the work to "employed" or "contracted" therapists.  Management of therapists was in a "generally consistent manner of graduated management involvement, except that managers were not required to document their management of "contracted" therapists, and department managers and higher supervisory personnel exercised the same degree of discretion and control to hire/fire/discipline therapists, regardless of classification as "employed" or "contracted." Defendants admit that they applied their policies and practices to "all therapists," regardless of "employed" status, admitting that they assert similar control over independent contractors as they do over their employees.  Plaintiffs argue that Defendants' argument in this regard is an admission that Defendants could and did assert a high level of control over Leffler's work and in how they managed Leffler, an "independent contractor," by requiring her timely attendance at meetings, dictating and managing her communications with those they assigned to be her "superiors" at work, and imposing "important policies" controlling and managing how she maintained client charts and audit records.

       Defendants argue, conversely, that Creative performed only the administrative burdens of obtaining reimbursements whereas the therapists devised a course of treatment and set

schedules. Plaintiffs completely ignore the dictate of <u>DialAmerica</u> that evidence relevant to the "control" factor is the degree of supervision, control over scheduling, and instruction as to how the worker is to perform his or her duties. 757 F.2d at 1383-84. The fundamental task of therapy was largely at the discretion of the therapist.  Both Leffler and Merryman determined the professional aspects of their therapies and set their own schedules. "Supervision" was limited to billing issues (such as keeping proper records) to ensure that Plaintiffs and other therapists would be paid.  This factor weighs in favor of independent contractor status.

e.   <u>Opportunity for Profit or Loss</u>.

This factor weighs in favor of employee status because Merryman and Leffler were paid only for work that Defendants' in their sole discretion chose to submit for payment to Defendants' insurers, government health care programs and other payors.  Plaintiffs had no ability to directly bill those entities paying Defendants for the services Plaintiffs provided to Defendants. Defendants paid Plaintiffs for work they performed only if Defendants determined that they could submit a claim to be paid for Plaintiffs work from an insurer, government program or other payor with which Defendants, and Defendants alone had a contract for payment or reimbursement for the work Plaintiffs performed on Defendants' behalf.  Because Plaintiffs had no control over what work was submitted to government programs, insurers, clients or other payors, and because Defendants would pay them only for work that Defendants submit, Plaintiffs ultimately had no control over their own profit/loss realized for the work they performed.  In this case, even if Plaintiffs decide to work longer hours, during more days of the week, and take more client assignments, the effect of these decisions on profit/loss is illusory, because Defendants control what gets submitted to payors and Plaintiffs get paid only for work performed that

Defendants chose to submit.

      f.    <u>Special Skill</u>.

      Both Leffler and Merryman are highly trained mental health therapists with masters degrees and special licenses to practice therapy. Leffler holds a Masters and several specialized therapy certificates in hypnotherapy and animal therapy as well as other related certifications set forth in her curriculum vitae. Merryman has a Masters in social services from Bryn Mawr College and completed 3000 hours of clinical supervision to earn designation as a licensed clinical social work designation. He also has a certification in cognitive behavioral therapy.

      Plaintiffs do not contest that Plaintiffs and class members are all skilled mental health therapists and that the Defendants employ approximately 240 mental health therapists who are all "engaged in therapeutic practice," providing Defendants' clients' mental health therapy under Defendants' health care contracts with government programs, insurers and other payors, but only "about 100" of these mental health therapists are classified as "independent contractors." Pls.' Ex. 2, Alleva Dep., p. 17. Thus, Plaintiffs contend that while their skills may be considered generally "special," as opposed to skills required of other types of work and workers, they are not "special" to Defendants' workforce of mental health therapists, the majority of whom are classified as "employees." Even assuming their skills are special, Plaintiffs argue that "the use of special skills is not indicative of independent contractor status, especially if the workers do not use those skills in any independent way." <u>Martin</u>, 949 F.2d at 1295 (citation omitted).  Plaintiffs further argue no aspects of the "special" skills of the "independent contractor" therapists is or were used in any way to be indicative of independence or as "demonstrating business-like

16

initiative" differently than those skills are or were used by the "employed" therapists.

Defendants contend that if the Plaintiffs were, in fact, full-time employees, their professional status would deem them to be "learned professionals" exempt from coverage under the FLSA. 29 U.S.C. § 213(a)(1).  To qualify for the learned professional exemption, an employee's primary duty must be the performance of work requiring advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction. 29 C.F.R. §541.301(a). Mental health therapists with masters degrees have been deemed "learned professionals" and exempt from coverage under the FLSA. Levine v. Unity Health System, 847 F.Supp. 2d 507, 510-11 (W.D.N.Y. 2012); Chatfield v. Children's Services, Inc., 555 F. Supp.2d 532, 535-36 (E.D. Pa. 2008)(Ditter, J.).  This factor weighs in favor of independent contractor status, but even if this Court were to determine that this factor weighs in favor of employee status, Plaintiffs would be precluded from coverage under the FLSA as learned professionals.

g.      Dependence upon the Business.

The Third Circuit in DialAmerica stressed an additional consideration as the most prominent of the factors, i.e., whether the Plaintiffs are "dependent upon the business to which they render service . . . [that is] whether the workers are dependent on a particular business or organization for their continued employment." DialAmerica, 757 F.2d at 1385. A worker "with numerous options for employment in the particular field at issue," is "not economically dependent on a single employer." Krause v. Cherry Hill Fire District 13, 969 F.Supp. 270, 275 (D.N.J. 1997). As held in DialAmerica, "dependent" does not mean "whether the workers at issue depend on the money they earn for obtaining the necessities of life . . . but [r]ather . . .

whether the workers are dependent on a particular business or organization for their continued employment" or are "in a position to offer their services to many different businesses or organizations." DialAmerica, 757 F.2d at 1385-86; Todaro, 27 F. Supp.2d at 534.  Here, neither Plaintiff was dependent on Creative in terms of their exclusive employment and were, in fact, "in a position to offer their services to many different businesses or organizations," and in fact did so. Both Leffler and Merryman worked for other organizations during their tenure at Creative and both immediately replaced their employment upon departure. While Merryman planned his exit, Leffler was terminated and then immediately hired by her current employer. They were not, as was the case in DialAmerica, only permitted to work for the Defendant.  This factor weighs in favor of independent contractor status.

In sum, four factors weigh in favor of finding that Plaintiffs are independent contractors, and three factors weigh in favor of finding that Plaintiffs are employees. Courts have repeatedly emphasized that this list is neither definitive nor exclusive. The presence or absence of any of the factors is not in and of itself dispositive.  See, e.g., DialAmerica, 757 F.2d at 1382; Selker Bros., 949 F.2d at 1293. Therefore, in viewing "the circumstances of the whole activity," Martin, 949 F.2d at 1293 (internal citations and quotations omitted), this Court concludes that Plaintiffs fail to demonstrate that they were employees of Creative. Consequently, the Court dismisses the FLSA claims in Counts I and II of the Amended Complaint because relief is not possible under the statute for employees.

**D.      FLSA Retaliation Claims.**

Non-covered employees cannot assert a good faith claim under the FLSA. Marcotte v. City of Rochester, 2017 WL 392013, at *2 (2d Cir. 2017).   Thus, Defendants'

Motion for Summary Judgment is granted as to Plaintiffs' FLSA Retaliation claim in Count II of the Amended Complaint.

   **E.**  <u>**Count VIII - Interference with the Attainment of ERISA Protected Rights.**</u>

     Count VIII of the Complaint is a claim for "interference with the attainment of ERISA protected rights."  ERISA's protections are not, as a matter of law, available to independent contractor plaintiffs.  "[N]umerous courts, including the Third Circuit, have found no ERISA violations where an employer's plan excluded hourly employees, temporary employees and independent contractors." <u>Schwartz v. Indep. Blue Cross</u>, 299 F. Supp. 2d 441, 449 (E.D. Pa. 2003) (citing <u>Bauer v. Summit Bancorp</u>, 325 F.3d 155, 160 (3d Cir. 2003); <u>Edes v. Verizon Comms., Inc.</u>, 288 F. Supp.2d 55 (D. Mass. 2003); <u>Williams v. American Int'l Group, Inc.</u>, Civ.A. No. 01-9673, 2002 WL 31115184 (S.D.N.Y. Sept. 23, 2002).  Accordingly, Defendants' Motion for Summary Judgment is granted as to Count VIII of the Amended Complaint.

   **F.**  <u>**State Law Claims.**</u>

     Under 28 U.S.C. section 1367, there are explicit circumstances under which a district court may decline to exercise supplemental jurisdiction.  District courts may decline to exercise jurisdiction where: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.  28 U.S.C. § 1367(c)(1-4).  All of Plaintiffs' claims over which this Court has original jurisdiction have been dismissed and pursuant to 28 U.S.C. section 1367(c)(3), the Court

declines to exercise jurisdiction over the remaining claims for violations of the Pennsylvania

Minimum Wage Act ("PMWA"), the Pennsylvania Wage Payment Collection Act ("PWPCA"),

an accounting at law and equity, Conversion and failure to keep accurate records pursuant to Pa.

C.S.A. § 260.8.  Those claims are dismissed without prejudice for Plaintiffs to raise them in the

appropriate state court.

An appropriate Order follows.